61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald Westly WHITE, Defendant-Appellant.
 No. 94-6599.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1995.
 
 Before: JONES, GUY, and BOGGS, Circuit Judges
 PER CURIAM.
 
 
 1
 Defendant, Reginald White, pleaded guilty to eight counts of executing a scheme to defraud by the unauthorized use of an automated teller machine card. 18 U.S.C. Sec. 1344.
 
 
 2
 At his sentencing hearing, defendant was represented by an attorney from the Federal Defender's Office, who advised him to move to withdraw his guilty plea. Although defendant on the record refused to do so, he now appeals from the twelve-month sentence imposed, contending that the trial judge failed to comply with Fed.R.Crim.P. 11(c) and 11(f) when his plea was accepted.
 
 
 3
 Our review of the record convinces us that no error occurred, and further that defendant has waived his right to raise this issue on appeal. Accordingly, we affirm.
 
 I.
 
 4
 Anita Goins, defendant's former girlfriend, applied to the First Tennessee National Bank for an automated teller machine card (ATM). The bank subsequently mailed the card to her, as well as a personal identification number (PIN). The ATM and the PIN came into the possession of the defendant, who proceeded to use them to deplete Goins's account. Goins found out her account was empty when one of her checks bounced. She went to the bank and was shown pictures of the person making the ATM withdrawals. She immediately identified the defendant as the person in the pictures. Goins subsequently told the authorities that White had taken the ATM and PIN from the mail and used them without her knowledge or permission.
 
 
 5
 White was subsequently charged in a nine-count indictment with one count of possession of the ATM and PIN knowing they had been stolen from the mails, and eight counts of using the card as part of a scheme and artifice to defraud.
 
 
 6
 The defendant initially entered a not guilty plea but later changed his plea to guilty. At the plea hearing conducted by a very experienced trial judge, all went smoothly and according to Rule 11 procedures until the government was asked what its proofs would have been if this case had gone to trial. The government attorney then related the facts of the case, including the following:
 
 
 7
 Ms. Goins was shown a picture of the individual who made withdrawals from her checking account on March 22, 1993. She did identify the defendant, Reginald White, as the individual who had made the withdrawals. She also stated that this was her ex-boyfriend; that he was not authorized to use her ATM or PIN number, and she on November 8, 1993, talked to the investigator[s] and told them that she had spoken with Mr. White, and he told her that he had stolen the items from her mailbox and that he gave the money to his cousin to obtain money for a drug deal.
 
 
 8
 (App. 65.)
 
 
 9
 When White was asked if he agreed with the government's representation of the facts, he initially balked at the reference to the "drug deal." When the judge inquired further, the following colloquy occurred:
 
 
 10
 A. [White] That's not true, but she gave me the card. I had just been released from the penitentiary--I mean the Penal Farm, and I didn't have anywhere to stay. I did her taxes for her, and she promised to pay me and took the money to the bank, and I was staying down the street from her, and when the cards came, I was in the house. I didn't steal them out of the mailbox. They weren't stolen.
 
 
 11
 Q. [The Court] They were her cards, and you took them from the mailbox, is that right?
 
 
 12
 A. [White] No, I received the mail. She was waiting on them. We both knew they were coming. I was in the house when the mail man delivered them, and I got them. She got her cards, and that's it. She told me I could use it but don't spend it all. She got mad when I spent it all, and she tried to--
 
 
 13
 (App. 66-67.)
 
 
 14
 After this exchange, the government, without conceding the card was not taken from the mail, agreed to drop the mail theft count.
 
 
 15
 The trial judge then pursued the matter further in some detail:
 
 
 16
 THE COURT: Let's make sure that I understand what Mr. White does concede. He does admit using them in a manner that he knew he didn't have the permission of Ms. Goins to use them?
 
 
 17
 MS. FERGUSON [defense counsel]: That's correct, Your Honor.
 
 
 18
 THE COURT: And does he admit that in each and every one of these attempts or successful efforts to withdraw money that he did not have her permission to be doing that?
 
 
 19
 THE DEFENDANT: I'll agree to that, Your Honor, but the truth of the matter is it was just a bad time in my life, and me and Anita, we were trying to get back together. It was just so much in the way, and one thing led to another. I took more money than she authorized me to have, and she got mad about it.
 
 
 20
 THE COURT: I understand that may be how the government found out about it and how you ended up in federal court, but as a practical matter I need to know if you did it or not.
 
 
 21
 THE DEFENDANT: Yes, ma'am, I withdrew the money.
 
 
 22
 THE COURT: In Counts 2 through 9--
 
 
 23
 THE DEFENDANT: Yes, ma'am.
 
 
 24
 (App. 67-68.)
 
 
 25
 This colloquy was followed by further discussion of the issue of defendant's alleged authorized usage of the card and the discussion ended on the following note:
 
 
 26
 THE COURT: Did she know he was trying to make these withdrawals on these various occasions?
 
 
 27
 (Ms. Ferguson and the defendant confer.)
 
 
 28
 THE DEFENDANT: No, ma'am, we wasn't living together at that time.
 
 
 29
 ....
 
 
 30
 THE COURT: Did she know you were at the automatic teller machine with her card and her number trying to get money out of her account on those occasions?
 
 
 31
 THE DEFENDANT: No, ma'am, she wouldn't have known what date I went to the bank.
 
 
 32
 (App. 69-70.)
 
 
 33
 Defense counsel made no objection to the court's conclusion nor did the defendant, who had been an active participant in the discussion. At the conclusion of the plea hearing, the court directed that a presentence report be prepared.
 
 
 34
 Notwithstanding the fact that the government dropped the mail theft charge against defendant, the presentence report contained the following:
 
 
 35
 As a result of the theft from the mail of the ATM card and PIN and the subsequent fraudulent use of the ATM card and PIN, $450 was withdrawn from Ms. Goins' checking account and $300 was withdrawn from Ms. Goins' savings account for a total loss to First Tennessee Bank of $750. However, Mr. White attempted to withdraw a total of $1,650 from Ms. Goins' accounts.
 
 
 36
 ....
 
 
 37
 Ms. Goins also informed postal inspectors that she was approached by Mr. White on one occasion after she had viewed the ATM photographs. Ms. Goins reportedly told Mr. White she had identified him and he stated he stole the items from her mailbox. The defendant stated he gave the money he obtained to his cousin for a drug deal. Ms. Goins stated that Mr. White did not seem concerned with the fact that he might go to jail for stealing her mail.
 
 
 38
 (App. 31.)
 
 
 39
 At the sentencing hearing, which was held on November 4, 1994, the defendant was represented by the federal defender rather than the assistant federal defender who had been present at the plea hearing. Neither the defendant nor defense counsel made any objections to the presentence report.
 
 
 40
 New defense counsel, although admitting he did not "have the benefit of the transcript of the guilty plea," nonetheless informed the court that he had advised the defendant to seek to withdraw his plea. Specifically, counsel said:
 
 
 41
 MR. DUKE: I guess what I am telling the Court, and I can sum it up this way, by saying that my advice to Mr. White is that if what he is telling me is the truth, and there is some evidence to support that, that my professional opinion is that that is not bank fraud and he is not guilty of bank fraud.
 
 
 42
 (App. 74.)
 
 
 43
 The trial judge then immediately offered to let White withdraw his plea. To this offer counsel responded:
 
 
 44
 MR. DUKE: Well, I have advised him, Your Honor, that I think that he should do that, seek to withdraw his plea. He has not--he has indicated to me that he doesn't want to do that, he wants to take his medicine because what he did wasn't right.
 
 
 45
 (Id.)
 
 
 46
 The government attorney then stated that defense counsel was basing his advice to the defendant solely on the basis of what the defendant had told him about this incident. The prosecutor reminded the court that the government's offer of proof at the plea hearing was to the effect that White had stolen the card and had no authorization of any kind from Goins.
 
 This discussion ended with the following:
 
 47
 [MR. DUKE]: Your Honor, [the defendant] wants to go ahead and get it over with. I just wanted to put my remarks on the record and he is prepared to go ahead and be sentenced. That is why I did not file a motion to withdraw the plea, he did not want to.
 
 
 48
 ....
 
 
 49
 It is [the defendant's] decision not to withdraw his plea and to go ahead and ask Your Honor to sentence him today and get the matter over with.
 
 
 50
 THE COURT: And he is not requesting an evidentiary hearing as to the facts of the offense or anything of that sort?
 
 
 51
 MR. DUKE: He doesn't want to do that, Your Honor. There are reasons for it and I will just tell the Court that that is his wish and I am his counsel and I am representing him and it is not my decision to make.
 
 
 52
 (App. 77, 79.)
 
 
 53
 The defendant was present, of course, during all of this discussion and offered nothing by way of contradiction.
 
 
 54
 At the conclusion of these proceedings, the court imposed a sentence of twelve months. Although the guideline range was six to twelve months, the twelve-month sentence was imposed primarily due to the nature of defendant's criminal history.
 
 II.
 
 55
 There is no doubt that the trial judge followed proper procedure in taking the Rule 11 plea. Although, on appeal, defendant claims that the court failed to establish a factual basis for the plea, there is no support in the record for this contention. If defendant has an appellate argument at all, it is that the factual basis established does not supply the necessary elements of the crime to which defendant offered a plea. Defendant cannot prevail on that argument for two reasons, however. First, at the sentencing hearing the defendant was advised by his counsel that, based on defendant's version of the events in question, he had not committed the crime with which he was charged and should seek to withdraw his plea. There is no doubt that the defendant fully understood this advice, but nonetheless, chose specifically to ignore it.
 
 
 56
 The defendant was given the opportunity to withdraw his plea and have an evidentiary hearing and he elected to stand by his guilty plea. The proper place to resolve factual disputes is in the district court and the defendant having elected not to avail himself of the opportunity to do so, has waived his right to raise the issue on appeal.
 
 
 57
 Even if there were no waiver, we find no defect in the proceedings below. The bank had to make good on the $750 that was wrongfully taken from Ms. Goins's account.[1] At a minimum, defendant admits he made withdrawals in excess of his authorization. The court was not bound by defendant's version of these events, however, and the government had represented the card was stolen and all withdrawals were unauthorized. The presentence report, to which defendant made no objection, incorporated the government's version of these facts.[2] If the government's version of what occurred is credited, there is no doubt the factual basis for the plea established the elements of the offense charged. As stated earlier, defendant waived the opportunity to challenge the government's version.[3]
 
 
 58
 AFFIRMED.
 
 
 
 [1]
 As part of defendant's sentence, $750 in restitution was paid to First Tennessee National Bank
 
 
 [2]
 The government's version is believable in that the relationship between defendant and Ms. Goins had ended when defendant slashed her and her daughter with a razor and had been sent to prison as a result. He had just gotten out of prison when this ATM card incident occurred. These facts make Ms. Goins' version of what occurred more believable than defendant's version
 
 
 [3]
 Defendant admits to using the ATM card of another person to obtain funds from the bank that he was not authorized to receive. This constitutes the execution of "a scheme or artifice to defraud" as was charged in the indictment. United States v. Ragosta, 970 F.2d 1085, 1088 (2d Cir.), cert. denied, 113 S.Ct. 608 (1992)